## Case No. 15,482.

UNITED STATES v. JOHNSON.

[See Case No. 3,393.]

## Case No. 15,482a.

## Case No. 15,483.

UNITED STATES v. JOHNSON.

[4 Cin. Law Bul. 361.]

Circuit Court, S. D. Ohio. June, 1879.

NATIONAL BANKS—"MONEYS" DEFINED—EMBEZZLEMENT BY PRESIDENT—INDICTMENT—AUTHORITY OF BANK OFFICERS — EVIDENCE IN CRIMINAL CASES.

1. The word "moneys," as used in section 5209 of the United States Statutes, includes the bills of national banking associations, as well as the coin and legal tender notes of the United States.

2. An indictment of a president of a national banking association, under said section, for embezzlement of the moneys of such association, must show that the moneys were lawfully intrusted to his possession.

3. An indictment of such officer, under said section, for drawing bills of exchange, and assigning notes without authority from the directors, need not allege such drawing and assigning to have been with intent to injure and defraud such association.

4. If a bill or note relates to the business of the association, the general authority conferred by the directors upon the officer to draw bills and sign notes would be sufficient authority.

5. But, if they relate to the individual and private business of the officer, they would not be authorized by the general powers thus conferred.

6. The rule as to the weight of evidence, presumption of innocence, character and reasonable doubt in criminal causes.

Indictment for violation of the national banking law (section 5209, Rev. St. U. S.).

The defendant is charged in the indictment with a violation of section 5209 of the United States Statutes, which provides that "every president, director, cashier, teller, clerk, or agent of any association, who embezzles, abstracts, or wilfully misapplies any of the moneys, funds, or credits of the association; or who, without authority from the directors, issues or puts in circulation any of the notes of the association; or who, without such authority, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any acceptance, signs any note, bond, draft, bill of exchange, mortgage, judgment, or decree; or who makes any false entry in any book, report, or statement of the association, with intent, in either case, to injure or defraud the association, or any other company, body politic or corporate, or any individual person; or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association; and every person who, with like intent, aids or abets any officer, clerk, or agent, in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years, nor more than ten." The indictment contains seventeen counts, and charges the defendant, whilst acting as president of the Fayette County National Bank, with embezzlement of the moneys of the bank, with the wilful misapplication of the moneys of the bank, and, as president of the bank, with drawing bills of exchange and assigning promissory notes, without authority from the directors.

Upon a motion to quash the indictment, it was held by the court, that it was true, that where an indictment is so defective that no judgment could be rendered upon it against the defendant, the court may, in its discretion, quash it, and the same may be said of the several counts in an indictment. But, when the indictment is for a plenary offense, this will not be done unless the indictment is plainly and clearly bad; and so if the motion to quash be to a failure of the counts and the indictment contains good counts which would support a general verdict. As a general rule, the motion will be denied,

and the party will be put to his demurrer or motion in arrest of judgment. There are several good counts in this indictment, and from its general character, the motion will be overruled. The defendant then demurred to each count in the indictment, assigning, as cause of demurrer to the counts, charging embezzlement and misapplication of the money of the bank; that they did not show that the defendant was the lawful custodian of the money, nor that it was with intent to injure and defraud; and, as cause of demurrer to those counts charging the drawing of bills of exchange and the assignment of notes, that they did not set out the instrument nor allege the intent to injure and defraud.

Channing Richards, Dist. Atty., for the United States.

Mills Gardiner and E. M. Johnson, for defendant.

BY THE COURT. The intent to injure and defraud is not made by the statute an element of the offense described in either of these counts, and it was not, therefore, necessary to aver it. The counts charging the drawing of bills and the assignment of the note, describe them with sufficient particularity and definiteness; it was not necessary that they should set copies of either. The demurrer, therefore, as to these counts, is overruled. The counts charging the wilful misapplication are also sufficient, and the demurrer as to them is overruled. But the counts charging embezzlement do not show any proper averment that the defendant was in the lawful possession of the moneys he is charged with embezzling, and the demurrer as to them is therefore sustained.

CHARGE OF THE COURT (SWING, District Judge). The indictment contains seventeen counts, and charges the defendant, as president of the Fayette County National Bank, with the embezzlement and wilful misapplication of the money belonging to the bank, with the drawing of bills of exchange, and the assignment of bills of exchange, as president of and on behalf of the bank, without the authority of the directors of such bank. The first, third, fifth, seventh and ninth counts charge the defendant with embezzlement. Upon demurrer these counts have been held by the court to be sufficient in law; therefore for your consideration. The second, fourth, sixth and eighth counts charge the defendant with a wilful misapplication of the moneys of the bank. The tenth, eleventh, twelfth and thirteenth counts charge the defendant with drawing bills of exchange without authority from the directors. The fourteenth, fifteenth, sixteenth and seventeenth counts charge the defendant with assigning, as president of the bank, promissory notes, without authority from the directors. The district attorney, however, does not claim to have introduced evidence

establishing the charges contained in the sixth, eighth, sixteenth and seventeenth counts. This leaves for your consideration the evidence bearing upon the charges contained in the second, fourth, tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth counts in the indictment.

Before directing your attention to the particular charges, it is proper we should understand the meaning of this section. In order to properly construe this section, it must be read in connection with the entire statute of which it is part. The statute provides for the organization of banking associations by vesting in them the power to elect or appoint directors, and by their board of directors, to appoint a president, cashier and other officers, define their duties, etc. It also defines the nature and character of the business in which they should engage, by providing that they should exercise, by their board of directors, or duly authorized officers or agents subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; by obtaining, issuing and circulating notes. It also limits the liabilities which may be incurred to such associations, by any one borrower, to an amount not exceeding one-tenth of their capital stock. So that we see, of necessity, that the duties which the directors are authorized to confer upon the president, vice president, and cashier, must be only such as relate to the business of the association, as defined by the act, and must be confined to such business. It further appears from these provisions that these associations are created for the benefit of the public as well as for the stockholder; for the depositor, the merchant and business man, who purchase their drafts or bills, so that the object of the law-makers, in the enactment of this section, must have been the protection of the rights of all these; to preserve the moneys, funds and credits, and all other property of the association, for the benefit of these parties, and to prevent those who may be entrusted with their management from misapplying the same; to secure from them a faithful and honest administration of the trust which has been confided to them.

Coming to the words and terms of the particular section under which the indictment is found, a question is made in regard to the proper definition of the word "moneys," as used in this section of the statute. It may be conceded that this term primarily means coin, but it is also held to mean any currency usually and lawfully used in buying and selling, and may embrace bank notes. It is admitted that if bank notes were made legal tender for all purposes that they would be included in the term. But it is said that na-

tional bank notes are not so, and therefore not embraced within it. The national bank notes are made a legal tender for all debts due the United States, except duties on imports, and for all debts due from the United States to individuals, corporations, and associations within the United States, except the interest on the public debt and in redemption of the national currency; and every national bank is compelled to receive the national currency for every debt due to it. So that, in a general sense, it may be said that the national currency is embraced within the term "moneys." But I think when we examine all the sections of this act there can be no doubt as to the sense in which the word is used. The word "money" and the words "lawful money" are both used in this statute. Sections 5191–5195, which provide for the kind of money in which the national bank currency shall be redeemed, and the reserve fund, which shall be kept in hand for that purpose, use the term "lawful money." But in section 5136, which confers upon the associations the power of loaning, the term "to loan money" is used. In section 5200, where limiting the amount to be loaned to one individual, the word "money" is used. In section 5202, limiting the indebtedness of the bank, the word "moneys" is used. And, in sections 5207 and 5208, immediately preceding the one under which the indictment is found, the word "money" is used, as "money loaned," "money so loaned," and "amount of money." And in this section it is the "moneys" of the association. I think, in view of use by it of the terms "lawful money" and "money," it cannot be claimed that congress intended "lawful money" only to be embraced within the inhibition; but it intended it to include all money, whether such as it had denominated lawful money or money only, whether gold, silver, legal tender notes, or national currency notes. Nor does the fact that in this section the word "fund" is used militate against this construction. This word more properly applies to stocks, public securities, and invested sums from which income is derived, and the words "moneys" and "funds," being the only words used in this section which could include national bank currency, as between these two it is manifest that congress intended it to be included within that of moneys. And this construction is consistent with the rule that penal statutes shall be strictly construed; for, under this rule, the court must give to the words of the statute their full meaning, their wider instead of narrower interpretation, when it is manifest from the entire statute that such was the intent of the legislature in their use.

With this interpretation I will direct your attention to the specific allegations of the several counts, which you are to consider.

The second count charges the defendant with wilfully misapplying, on the 2d day of October, 1875, thirty thousand dollars of the money of said association, by appropriating it to his own use. The fourth count charges in like manner the misapplication and appropriation, but of a different amount and on a different date. In both these counts the time and amount is not material. If the government shows the misapplication of the sum of money at any time before the finding of this indictment, so that it is not behind a period which is barred by the statute of limitations, it would be within the time they are required to prove. And if they show the misapplication of any sum of money, although it might not be thirty thousand dollars, or nine thousand dollars, it would be within the allegations of these counts. In order to convict the defendant upon either of these two counts, the evidence must satisfy your minds, beyond a reasonable doubt, that he misapplied the moneys of this association, by converting them to his own use. If he became indebted to the bank legally and properly by transactions which he was authorized to have with the bank, it would not be a misapplication of the funds of the bank, although he might, in the winding up of the bank, be found to have been indebted to the bank in a large sum. But if he took the money of the bank and willfully appropriated it to his own use, disconnected with the transactions of the bank, it would be a wilful misapplication of the moneys.

The tenth count charges that the defendant, as president and in behalf of said association, on the 7th day of June, 1875, unlawfully drew a bill of exchange upon the Fourth National Bank of Cincinnati, in favor of I. H. Dial, for the sum of five thousand dollars, without authority from the directors. If the evidence satisfies your minds beyond a reasonable doubt, that the defendant drew the bill described in this count without the authority of the directors, he would be guilty under this count. If this bill of exchange was drawn in relation to the business of the bank, his general authority by the directors to draw bills of exchange would be authority to draw the bill; but if it were purely relating to his own private business, disconnected with that of the bank, such a general authority would not authorize him to draw this bill; and what was the nature of this transaction you are to determine from all the evidence in this case.

The eleventh count charges, in like manner the drawing of a bill of exchange, on the 17th day of April, 1875, but with intent to injure and defraud the bank. The same charge I have given you in regard to the tenth count applies to this, with the addition that, under this count, you must find beyond a reasonable doubt, that this draft was drawn with intent to injure and defraud the bank. The intent must be established from the evidence in the case. If the bill was used by him to appropriate money to his own use, and that necessarily deprived the bank of the money which was drawn by him through it, and that

would be to the injury of the bank, the law presumes that he intended such injury in the drawing of the bill.

The twelfth and thirteenth counts charge the defendant in like manner, with drawing on the 31st day of August, 1875, a bill of exchange upon the Fourth National Bank of Cincinnati, for ten thousand and thirty-four dollars and thirty-eight cents. These two counts are for the same transaction; the only difference being that the thirteenth charges that he drew the bill with intent to injure and defraud the association, and the twelfth does not charge such intent. The instructions which I have given you in regard to the tenth count you will apply to the twelfth count, and that I gave you in regard to the eleventh count you will apply to the thirteenth count.

The fourteenth and fifteenth counts charge that the defendant, as president, and on behalf of the bank, on the 21st of August, 1875, assigned to the Merchants' National Bank of Cincinnati a certain note for ten thousand dollars, made by himself, dated August 21st, 1875, and payable eight days after date to the order of A. C. Johnson, president, without authority from the directors of the Fayette County National Bank at Washington. If the evidence satisfies your mind, beyond a reasonable doubt, that the defendant assigned the note described as president without the authority of the directors, he would be guilty, under this count of the indictment. If this note was in reference to the business of the bank, the general authority given him by the directors might be sufficient to warrant him in assigning the note. But if this note was wholly disconnected with the business of the bank, and was his private business,—had no connection with the bank at all,—he had no right to assign it, as president. That would be without authority of law, and not within his general authority. The fourteenth and fifteenth counts are alike that the fifteenth charges the assignment of the note to have been made with intent to injure and defraud the bank. If the necessary result of assigning the note was to take from the bank the amount thereof, and appropriate it to his own use, and thereby deprive the bank thereof, that would be a fraud upon the bank, and would be to its injury, and the law presumes that he intended that result. The rule as to the weight of proof differs in civil and criminal causes. In civil causes a preponderance of evidence justifies a jury in returning a verdict for the party in whose favor such preponderance may be. But, in a criminal cause, the rule is different. A preponderance of evidence will not warrant a verdict of guilty. The law presumes the defendant to be innocent, and this presumption can only be overcome by evidence which satisfies the minds of the jurors beyond a reasonable doubt that he is guilty. If the evidence fails to do this, the defendant is entitled to an acquittal. The doubt must, however, be a doubt which arises out of the evidence in this case,—one which is the result of an honest and careful investigation of all the facts and circumstances which are in evidence,—and must be in relation to these a reasonable doubt, one in consonance with reason, not in opposition to it.

As a general rule, in civil causes, the character of the parties cannot be put in evidence. Exceptions are found in cases of defamation and fraud, but in criminal causes it is the right of the defendant to place in evidence his good character, and this is to be taken into consideration with the other evidence in the case; not that, if a person is shown to be guilty, that his previous good character should acquit him, but he is entitled to its consideration as a part of the evidence of the question of his guilt. And it is upon this principle that the presumption is that one who has been uniformly honest and upright will not readily turn from the paths of a correct life, and become suddenly bad. The fact there was found upon settlement a balance due from the defendant to the bank will not of itself justify a conviction, but the fact is to be taken in connection with the other evidence in the case, as reflecting upon charges contained in the indictment.

If the evidence in this case establishes in your minds, beyond a reasonable doubt, that the defendant committed the acts in either of the counts in the indictment, it will be our duty to return a verdict of guilty as to such counts. If, however, after a careful consideration of all the evidence in the case, there is, in your minds, a reasonable doubt, whether he has committed any of said,—any of such acts,—it will be your duty to render a verdict of acquittal.